Good morning. I'm Brandon Bell. I'll be representing Javon Smith. Javon Smith never should have been subjected to a mandatory minimum sentence. The factual basis that was proven at the change plea that he admitted to, the one that can be gleaned from the pre-sentence report, none of those facts ever supported the imposition of a mandatory minimum sentence. Even at the time of his sentencing, this court had, in numerous opinions, established a bright line chain of authority that an individual conspirator in a drug conspiracy is not automatically liable at sentencing for the conspiracy-wide drug quantity. In fact, this court's precedent said that it was plain air on the part of a district court, on its own motion, not to make an inquiry into the individual defendant's liability, the quantity of drugs that was within their individual conspiratorial agreement. Is the amount of drugs attributable to the individual conspirator an element of the crime to which he's pleading guilty? It was not at the time Mr. Smith pled guilty because it was about a month or 45 days prior to the Supreme Court's decision in a lien, but it certainly was at the time he was sentenced. Okay. So at the time he was sentenced, it was an element of the crime to which he pled guilty. Correct. And at that moment before entering judgment, post-sentencing, or at sentencing, the district court had an obligation to make sure there was a factual basis for each legal element. And at that time, the quantity was an element because a lien had been decided. At his change of plea hearing, taken before the magistrate, it was not an element of the offense, so there was not a specific inquiry into drug quantity. In fact, at his change of plea hearing, Mr. Smith objected to admitting to, I think the factual basis was 20-something pages long and had 90-something individual paragraphs, and said, I'm not going to admit to all that because I don't know all these things. I don't know all these people. They had to take a recess, and then they came back and they specifically identified the paragraphs, and there were only three of them, in the factual basis that Mr. Smith would agree to. The first one was paragraph two. It was simply just a recitation, again, a repetition of the indictment. Another one was that he bought cocaine from a person named Sykes, and that he sold one gram of cocaine, or 0.9 grams of cocaine, to a confidential informant. What about the PSR? The PSR had facts in it from which you could calculate his individual quantity, didn't it? You could calculate his individual quantity for guidelines purposes. So this is a distinction between what a defendant is liable for under the guidelines and what they're liable for under the statute. Under the guidelines, a person is liable for their own individual misdeeds and those that are reasonably foreseeable within their jointly undertaken activity. As this court set out in United States v. Ash, the quantities that the court can look to for pure sentencing on a conspiracy charge are narrower, because the only quantities involved on that statutory sentencing are those that share the common distribution objective. For instance, the people involved all have to have the same objective for the drug quantities. So for instance, while the PSR does establish that Mr. Sykes sold and Mr. Smith purchased cocaine, it doesn't say anything about the intent of the parties for those sales, whether Mr. Sykes fronted or consigned those drug quantities to Mr. Smith and therefore would have had an intent or a shared objective for distribution, or whether Mr. Sykes charged full price and didn't care what Mr. Smith did with the drug quantities after he bought them. So while I agree, Judge McHugh, that those quantities can be taken into account for relevant conduct under the guidelines, because they're Mr. Smith's own personal misdeeds, they couldn't be, without more, based on the facts in the PSR, they couldn't be taken into account for statutory sentencing purposes. Again, this was not novel law or merely an inference from existing law at the time of Mr. Smith's sentencing. This Court, again, had established a wide, easily grasped precedent that this is what was supposed to happen in these cases, that an individualized determination was supposed to have been made, and the defense attorney, Mr. Smith's trial counsel, did not object at that sentencing. And therefore, what happened was, instead of giving essentially the 108-month sentence that he would have gotten under the guidelines, he was subject to the range started at 240 months, and then the 5K motion brought that down 25%. In his sentencing hearing, he talks about that he's aware that he would have a 20-year sentence. Does that – is it fair to imply from that that he pled guilty to a quantity that would trigger that sentence? Does my sentence – my question make sense? I understand your question, Judge McHugh. Yes and no. I think his defense attorney had advised, even as his defense attorney testified at the evidentiary hearing, that it was the defense attorney's belief that every defendant, regardless of culpability, was responsible for the conspiracy-wide drug quantity. And so that's what he had essentially and incorrectly drilled into Mr. Smith. Because at the sentencing hearing, Mr. Smith also says, I know that I've never seen the drugs, the amount of drugs that they're talking about in the indictment, but now I understand that that doesn't matter, which is incorrect. And the basis for that incorrect legal belief came from trial counsel. How could the district court even accept his plea if he wasn't willing to agree that he was responsible for at least 5 kilograms for an A-level? Well, I think the timing of the Aleem decision is probably the answer to that. At the change of plea hearing, which was not taken before the sentencing judge, but it was taken before a magistrate, the drug quantity simply wasn't an element because all it did was establish a mandatory minimum sentence. In this case, this Court's precedent was clear that it wouldn't establish the element. Again, six weeks later, Aleem comes out, and for whatever reason, neither the government nor the defense attorney raises their hand to the district court and says, we have an issue here because this is now a legal element and there doesn't appear to be a factual basis for it. I mean, there's no dispute that his lawyer told him that he was pleading to an A-level felony, is there? No, his attorney told him that the maximum sentence that he could get was going to be between 20 years as a minimum to life. I think what his defense attorney also testified to is that they were very hopeful that they were going to get a 5K, or a 3553E motion, which would get rid of that. And they did. Well, it did, but... I mean, they were sort of playing, they were gambling a little bit with what might come. I mean, because he also, the government was also at least purporting that they would prove up additional offenses so he could be sentenced to life. I think the government said that they were going to attempt to prove up prior convictions that might come to life. Unfortunately, because of the information that's both in the PSR and the plea agreement, the only drug quantity he reasonably could have been sentenced to was under B1C, which under 841B1C, if you have a prior mandatory or prior sentence, the mandatory maximum, not mandatory, the maximum goes from 20 to 30 years. But a second 851 or 3851 is irrelevant. So that promise was essentially illusory and would have struck a reasonable attorney as illusory, because the only quantity they could reasonably prove, or that Mr. Smith had admitted to, from the conspiracy charge, would have had him nowhere near a B1A. He would have been at a B1C. So a second 851 wouldn't have mattered. I mean, why didn't he seek to withdraw his plea? I think that from the... I mean, isn't it because the danger would be if he did that, he's risking life? No, I think that Mr. Smith didn't withdraw his plea because his attorney had incorrectly convinced him that he was liable. He hasn't sought to do that, though, in any post-conviction proceedings? I think he's attempted to do it as part of this 2255, as a part of an effort to get this undone. I'm sure that was raised as part of his pro se 2255, an effort to get that undone. But even if, I mean, arguably he did admit to, and there are elements that would have established his conviction for the conspiracy, just not the drug quantity element that would have picked it up to the sentence that the district court ultimately imposed. Well, I mean, he specifically pled to a violation of B1A, right? No, Your Honor. He pled guilty to a violation of 21 U.S.C. 846, the conspiracy statute, with a reference to 21 U.S.C. 841A1. At the time he pled, which is the, that describes the acts, right? The object of the conspiracy is in 21 U.S.C. 841A1. This B subsection sets out the penalties for the quantity involved. At the time he changed his plea, the penalties and the drug quantities were essentially irrelevant at the change of plea hearing because they could be found without a jury finding, without anyone admitting to it during a change of plea hearing. It didn't have to be found beyond a reasonable limit, beyond a reasonable value. I mean, but everybody thought it was an A-level because they were specifically contemplating a 20-year minimum. The government certainly seemed to do that. Well, I mean, his attorney did also, right? Again, based on his, I would say, unreasonable reading of the law, that Mr. Smith was responsible for the conspiracy-wide drug quantity. There is, and even at the hearing during the testimony of trial counsel, the 2255 hearing, he continues to state that that's still his belief. He still believes that a plea to a conspiracy automatically makes any conspirator liable for the conspiracy-wide drug quantity. And when asked about the basis for that belief or the research he had done, couldn't cite to a case or a statute that it was just based on talking to other lawyers. The original 2255 was pro se, correct? Yes, Your Honor. And in that, he asked for a new sentencing hearing, correct? He did. And then you come along, right? Yes. Representing him. And you wanted to amend something else, and that is that he failed to discuss an appeal versus he failed to file an appeal, correct? Yes, Your Honor. And you filed a proposed amendment on that. We did. But you didn't try to amend what he was requesting. You didn't change his request for a sentencing hearing. You didn't add to that or withdraw a plea. No, Your Honor, and I think the reason for that is, is the elements. At his change of plea hearing, he confessed to a criminal offense, just not the one that he was ultimately then sentenced for. His change of plea hearing, he admitted facts that he conspired to distribute and possess with intent to distribute a certain quantity. That quantity was never admitted to or found at the change of plea hearing because it didn't have to be at that moment. But that admission, standing alone, would subject him to criminal liability. So we didn't think that there was any reason to go and ask on those facts to vacate the entire plea because he had pled to a crime, just not one that included the element which he was ultimately sentenced with. So you just wanted – oh, sorry. So if we ruled in your client's favor, you're saying it should be a new sentencing proceeding rather than a withdrawal of plea. Yes, Your Honor. The very basis of this whole thing is there's no factual basis for the plea. That's the underlying matter here, isn't it? There's no factual basis for a single part of the plea which affected the sentence. If you stripped away the drug quantity element, which is what essentially happened at the change of plea hearing. But it's still, when everything is said and done, it's an assertion that there was an inadequate factual basis for the plea. Well, that – I think by the time of sentencing, yes, that argument should have been made. That if – Well, isn't that – if you prevail, isn't that the relief that should be granted? That is certainly a relief that could be granted, that the plea be vacated. Again, that's not the relief we're asking this Court for because – Well, I think Mr. Smith would be happy with any relief the Court would fashion him. Again, I think our preferred relief would be a resentencing. I can see – I can see reasonably how the Court would say a remand to – for the factual basis of the plea or have the plea withdrawn. I think that's a small enough atom that it could be split that way as well. Can we tell from the – the plea hearing or from the plea agreement what – what crime he did plead guilty to? I think that what – what from the plea – from the change of plea and the plea agreement, what we can determine is that Mr. Smith pled guilty to a violation of 21 U.S.C. 846 with reference to 841A1, and that the only quantity that the facts would support were the one-gram sale that was made to a confidential informant, which would make the penalty under B1C. That is so even though he admitted in the plea agreement the, what, five-kilo amount, right? No, Your Honor. I don't believe he admitted in the plea agreement the five-kilo amount. He admitted that he was a member of a conspiracy, and the conspiracy-wide quantity was over a five-kilo amount. Well, he admitted to the indictment. He admitted to the indictment, and the indictment charged a conspiracy-wide drug quantity. The – and this – The five-kilo. The five-kilo. Right. And this Court has routinely held that a drug-quantity amount charged in a conspiracy, a bare plea to those elements alone, does not trigger that individual conspirator's drug quantity. There still has to be an individualized determination. Are those cases pre-Alene? They're pre- and post-Alene, yes, Your Honor. Ash would be one. I think Melton is another. And most recently, I think in Korea, which is post-Alene, which was a 2017 case, in that case the panel remanded the case back to the district court to determine whether the plea should be vacated or the person should just be resentenced on similar facts as this, where the Court found that there wasn't a factual basis for the drug quantity within the indictment. And so if the Court is struggling that or has given the appearance of struggling with what their proper relief should be, I would suggest a remand to the district court like the panel in Korea did to determine that. Okay. And you're over time by two minutes. Can I ask him one question? Oh, yes. I'm sorry. Yes. I will indulge him. Did he acknowledge in his plea colloquy that he was giving up his right to appeal? He was told that, except for some limited exceptions that the magistrate didn't go into, that he was waiving his right. Okay. Did he indicate in any way that he disagreed with that? No, Your Honor. Okay. Thank you. Sorry. I keep looking that way. Could you add to his time two minutes and 29 seconds? Thank you. If you'll let us just adjust the clock. All right. Shall I go? Thank you. We have a problem with the individualized drug quantity here, don't we? Yes and no. Okay. And if I could preface my remarks with just a few comments before I go into that. As far as appearances go, James Brown, appearing for the United States. Your Honor, I'd like to just preface everything by saying that they don't want to withdraw the plea today They don't want that remedy today for the same reason that counsel below did not want that remedy. Because that remedy equals vacate of the plea, equals potential loss of the 5K, equals potential filing of a second 851. We understand all that. But I got the impression from the argument was, well, that's the best we can do. We'll take it. Well, it's not. So I didn't think, at least today, they were saying, no, we don't want that. Oh, you can press him on. You can press him on rebuttal. If this plea is withdrawn, it means the plea is vacated. It means he could lose the 5K. It means we could file a second 851, and it means he could get a life sentence. Those are the same risks that counsel below reasonably perceived and on that basis decided not to object. The exact same risks. If this court vacates the plea, that would put him in the position of basically defending against a life sentence instead of a 160-month sentence, which he has now. But even if counsel acted reasonably, could the district court accept the plea when there was no, nothing to support the individualized quantity that you would need for sentencing purposes? Okay. Your Honor, the question, we look at the question, I'll answer the question, but we look at the question differently. The question is whether the decision not to object was reasonable given the downside risks of objecting. And those risks were vacated of the plea, loss of the 5K, the filing of the second 851, and a potential life sentence. He had a 160-month sentence in hand already. Did he want to risk that for a life sentence by objecting after, and this is after, Your Honor, it's so important, the parties had negotiated this agreement. He agreed that that quantity triggered the statutory minimum of 20 years. He agreed in the plea agreement that the statutory quantity was the 500 grams. He agreed that the term was a minimum of 20 years. He acknowledged in the plea agreement that if we filed the second 851, he could face life. During the plea colloquy, he acknowledged that the mandatory minimum was 20 years. In exchange for that agreement, we gave up something. We gave up two things. We gave up, number one, our decision not to file a second 851. That was agreed upon consideration. And number two, we agreed to give him a 5K, which took him out of the 20-year mandatory minimum. So he took two big bargaining chips off the table during his negotiations with the government. He got a 5K. He got us to agree not to file a second 851. And he got a sentence below the 20-year mandatory minimum that he agreed was applicable. Kennedy. Mr. Brown, what's wrong with this analysis? This case is sui generis in this sense. Is it the defendant below found himself in a warp? The plea hearing was pre-Alley. The sentencing hearing was post-Alley. And that warp is what causes the problem. And the way to resolve that is to remand solely for the purpose of addressing whether or not the defendant wants to withdraw his plea, and if so, whether or not that would be granted. What's wrong with that? Well, we don't believe it's a sui generis case, Your Honor. And here's why. We have two potential grounds upon which the defendant could have objected. Now, he could have objected under Alleyne because Alleyne had been decided by the time he was sentenced, and he could have objected under Rule 11b-3. Alleyne is a constitutional rule. 11b-3 is a procedural rule. It's not a constitutional rule. Now, we do not think the defendant had a cognizable basis to object under Alleyne's constitutional rule because he pleaded to a well-drafted indictment that listed all of the elements of the crime charged. There's an unbroken line of cases that we cite, the Allen case, the Brown case, the Broche case, all standing for the proposition that when somebody pleads to everything in the indictment, those they've pled to the elements of the offense. And the Court can impose a sentence based on the elements of that offense. There's also precedent from this Court suggesting that when someone pleads to a drug offense, carrying a statutory minimum, they have made themselves, those quantities are attributable to that defendant. That's the Godinez-Perez case at page 106-4. We think that that analysis is relevant here. Let me go back to the indictment because the indictment is the one that had five kilos, right? But the indictment didn't make any attempt to break out Mr. Smith's individual quantity, did it? It did not, Your Honor. And we think that that makes a difference for the purposes of Rule 11b-3, but not for purposes of Alleyne. I see. Now, under Alleyne, he just has to plead to the charges. The Supreme Court's case, North Carolina v. Alford, says the defendant does not have to expressly admit that he committed any particular act's claim to constitute the crime charged, or he admits he committed the crime charged. No question he admits he committed the crime charged. Now, if I can use an analogy for Your Honor. He pled to conspiracy, but he didn't plead to the four elements of conspiracy. He didn't plead to the indictment didn't say that he agreed or that he knew the essential objectives or that there was interdependence. The indictment didn't have to say that. When he pled to conspiracy, that's what he pled to. Same goes for the drug quantity. He admitted that the indictment says he and others conspired to distribute X amount of drugs. You have a simple subject, verb, object. And we believe that under Alleyne, when somebody admits that conduct, that's enough to trigger the statutory minimum sentence. And we think that Godinez-Perez supports that very proposition. Now, that being said, we will acknowledge that he had a basis to argue that the plea colloquy was deficient under Rule 11b-3. We acknowledge that. But that was not a constitutional issue. That's a procedural issue. And had he not waived that issue for purposes of appeal, he could have raised that issue on appeal. And for purposes of plenary, he could have gotten relief under the Carrillo case. But he did not. But that is a nonconstitutional issue. It doesn't affect the integrity of the plea to the quantity alleged in the indictment. So we have an Alleyne side constitutional, Rule 11b-3 nonconstitutional, cognizable here, not cognizable for Alleyne. Now, we just have to go back to the fact that this was a negotiated plea agreement. If counsel had objected, he would have risked vacator of the plea, no 5K, second 851, potential life sentence. Let's say, what if counsel had objected under a Rule 11b-3? Well, counsel would have known that under the Kieswetter case from this Court that the plea must be vacated. Also, look at the Moran case. The vacator is in order for a Rule 11 violation. Look at the McCarthy v. United States case. Vacator is a possibility there. Look at Carrillo. They discussed the possibility of vacating the plea and restoration of the parties to their pre-plea positions. That's not what he wanted. He did not want vacator of the plea, because that could have potentially led to a life sentence. That's why my colleague is not advocating for that position now, and he didn't argue for that position below. We probably would have agreed to that position if it had been argued below. It wasn't. It wasn't. So vacator to the plea, that's what defendant's counsel below was trying to avoid, because that would have led to a life sentence or could have. So just because there were grounds to object, counsel made a reasonable strategic decision not to object, because the downside risks of objecting were too great to bear in this case, because those risks included the imposition of a potential life sentence. Those same risks now, we assume, are the same reasons that my colleague today is not requesting vacator of the plea, because those risks will be there if the court vacates the plea. Now, that being said, let's move to the prejudice issue, if we could, if the court doesn't have any more questions about the first issue. The defendant cannot show prejudice. There's two different standards of prejudice here. There's the different outcome standard, and there's the would not have pleaded standard. Would not have pleaded standard comes from Hill. The different outcome standard comes from Strickland. Defendant, the district court used the would not have pleaded standard. In other words, if the defendant had been correctly advised, the court asked whether he would have pleaded, would a rational defendant change their plea. Here, there's no way defendant can win. He doesn't challenge the district court's finding on the would not have pleaded. He says the district court used the wrong standard. But there's no way, just talking about that standard, there's no way that the defendant, a rational defendant, would not have pleaded to this charge, given all the downside risks, because he escapes imposition of a life sentence. Now, defendant may say, well, they never had the drug quantity. There's no way that sentence could have been imposed. Well, before we move to the standard, are you, do you agree that the standard should have been there is a reasonable probability, but for counsel's failure, the result of the proceeding would have been different? Or are you saying the district court got it right when it applied that he wouldn't have entered, he wouldn't have accepted a plea? The first standard the court alluded to, we're calling the would not have pleaded standard for the record. Okay. And we agree that the court correctly applied the would not have pleaded standard, because we're claiming that at rock bottom, defendant is challenging the voluntariness of his plea. He's claiming that he basically misunderstood the law in relation to the facts of his case. At the time he entered the plea, he thought the 20-year mandatory minimum was applicable, but now he doesn't think it was. So that implicates the voluntariness of the plea. As far as the second standard goes, the different outcome standard, that doesn't implicate the voluntariness of the plea. That implicates whether there's a substantial likelihood that the district court would have imposed a different sentence had the district court granted the objection. We think the defendant cannot win under that, because the district court would have imposed a different sentence. Well, I think what he's arguing, because he isn't trying to withdraw his plea, which would be it wasn't knowing involuntary and therefore were under the would not have pleaded standard, he's arguing that the error, my counsel should have objected because I could only be convicted of a lesser offense based on what I, what I admitted to. Isn't that what he's arguing? That is. That's what he puts on paper. And so that would be the other standard. That's what he, that's for the other standard. Court's correct. That's what he puts on paper. But his argument, we say his argument, his challenge to the voluntariness of the plea is interwoven sub silentio with all of his arguments. He's basically saying I thought the law was this when I pleaded. It's actually not this. I went out of my plea. That's what it comes down to. What he, what he puts on paper is the, is, is the Strickland standard, the different outcome standard. And we say that he cannot meet that standard because, as this court stated in Kieswetter, the remedy for a Rule 11B3 violation is vacator of the plea. And vacator of the plea would not necessarily lead to a lower sentence. It could lead to a life sentence, which is, which is just the plain bare fact that the matter that they never really come to grips with here. He got a good deal. He got out of a life sentence. He got 160 months when a life sentence was on the table. And that's why, that's why this is, you know, it's just, it's just wanting to, wanting a redo. It's wanting a redo. There's no substantial likelihood he would get a different sentence if the plea were vacated. We wouldn't have to file a 5K. We could file both 851s. We could ask for a life sentence. And the law would require the district court to impose one if we could show the drug quantity. And if we look at it his way, and what he's arguing for is leave the plea in place but resentence me under the only crime that could be supported by my plea, then he can show prejudice, can he? Because there's nothing that there were no facts to which he, that he admitted that could support his individual participation in 5K. Under a lien he admitted the facts. This is the distinction. Under a lien he admitted the facts. So it's supported. Under Rule 11B3 he did not. So it's not supported. So it's supported under constitutionally. It's not supported under Rule 11B3. He admitted those facts. Now. So and you're saying even under his argument if he can prevail only under 11B3 or C3, then he has to take vacation of the plea agreement as his remedy. That's what this court says. The plea must be vacated, Kai Sweater. Moran talks about it. Carrillo adverts to it. That's what it is. And he doesn't want vacater. The other issue is here, Your Honor. Okay. He pled to a certain quantity, but he, we had an agreement. We had a plea agreement. He agreed that that 20-year mandatory minimum was applicable. We gave up a big chip to not file a second 851 and to give him a 5K. So just in the interest of fairness, is it fair to just give him just resentencing after we've made all these concessions and gotten nothing for them? Have we gotten the benefit of our bargain? Did the parties really have a meeting of the minds when they entered the plea agreement? Because that's the whole point, to bring finality. So they can't just come in and say, oh, oops, we have a problem here. So we just want resentencing without the mandatory minimum, even though the government gave up all these chips that it could have used at the time. There's a breach. That would be a breach. This is actually a breach. That's why his counsel didn't want to withdraw the plea or object, because it could have been construed as a breach of the plea agreement and could have led to vacater of the plea. He is wanting a remedy from this court without even this court saying, did counsel reasonably perceive that a significant downside risk of objecting to application of the mandatory minimum was vacater of the plea in a life sentence? That is what this case really comes down to. His decision, whether his decision to object was reasonable. It was reasonable, because an objection could have led to vacater of the plea. No 5K, second 851, and a life sentence. Counsel took a life sentence off the table through negotiation, through not objecting, and now they're saying that was unreasonable. He also took a 20-year sentence off the table with the 5K. He did, absolutely. He got exactly the sentence he bargained for. And did he want to risk all that? To see if he could get something different. Did he want to risk a life sentence to see if his objection would have been successful and if he could have gotten a remedy of resentencing and not vacater? I mean, that's really what it comes down to. I mean, life sentence, 160 months. If I'm your attorney, I'm going to take the 160 months. That's just all there is to it. He got a good deal, negotiated at arm's length. We gave up significant concessions as part of bargain for consideration. We would have asked for the benefit of our bargain. I guess there's nothing in the record that would show the strength of the government's case against him. Well, Your Honor, we do have his admission, actually. We have his admission to the PSR that he received 10.3 kilograms of cocaine from Dwayne Sykes during the time of the conspiracy. So there is. That's an admission by him that he received the statutory quantity, actually double the statutory quantity of methamphetamine required to trigger the statutory unit. So we do. Okay. We do. If the panel has no further questions, I will return. Thank you, counsel. Thank you. We will take this matter under advisement, and court is adjourned until tomorrow at 9.00.